FILED BY [signature] D.C.
AUG 19 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Case No. 1:26-cv-24704-LMR

Hon. Lisette M. Reid

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

PAIGE SMITH,

Plaintiff,

v.

THE TAVERNA COLLECTION, INC.,

a Florida corporation, and

GIANMARCO TAVERNA, individually and d/b/a

TAVERNA INFINITI NORTH MIAMI,

Defendants.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT THE TAVERNA COLLECTION, INC.'S MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant GianMarco Taverna has not appeared or joined in the Motion; this Response is directed solely to The Taverna Collection, Inc.

Plaintiff Paige Smith respectfully submits this Response in Opposition to Defendant The Taverna Collection, Inc.'s Motion to Dismiss the Amended Complaint (D.E. 33). The Amended Complaint alleges that Defendant obtained, procured, and caused access to Plaintiff's consumer reports without a permissible purpose. Although ¶26 cites § 1681b(a), those factual allegations implicate the user prohibition contained in § 1681b(f), and the subsection citation is a curable legal-theory defect that does not alter the substance of the claim. Except for Defendant's challenge to prospective equitable relief, which Plaintiff does not oppose as explained below, the remaining arguments either seek factual determinations inappropriate at the pleading stage or identify curable pleading defects that do not warrant dismissal with prejudice.

## I. INTRODUCTION

Defendant's Motion raises six principal arguments: (1) that the Amended Complaint fails to identify a duty applicable to a user of consumer reports; (2) that Plaintiff did not revoke authorization or terminate the underlying transaction; (3) that Exhibit B forecloses any factual connection between Defendant and the inquiries; (4) that willfulness, causation, and damages are not plausibly alleged; (5) that prospective declaratory and equitable relief is unavailable; and (6) that the pleading format warrants dismissal or a more definite statement.

The subsection citation does not require dismissal where the factual basis of the claim has been pleaded. Federal pleading rules govern claims, not perfectly stated legal theories. See McCreight v. AuburnBank, 117 F.4th 1322, 1331–32 (11th Cir. 2024); Johnson v. City of Shelby, 574 U.S. 10, 11–12 (2014). If the Court concludes that § 1681b(f) should be expressly cited, that certain allegations should be renumbered, or that additional defendant-specific detail is appropriate, those matters are readily curable by amendment and do not warrant dismissal with prejudice of Plaintiff's damages claims under §§ 1681n and 1681o.

## II. LEGAL STANDARD

A complaint survives dismissal when it alleges facts that, accepted as true, state a plausible claim for relief. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. Exhibits attached to a complaint are part of the pleading. Fed. R. Civ. P. 10(c). Where an exhibit actually contradicts a conclusory allegation, the exhibit controls. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007). But a defendant's preferred interpretation of an exhibit does not itself create a contradiction or foreclose a plausible claim at the Rule 12(b)(6) stage.

## III. ARGUMENT

### A. The Complaint's Reference to § 1681b(a) Is a Curable Legal-Theory Defect, Not a Basis for Dismissal With Prejudice

Defendant correctly observes that ¶26 of the Amended Complaint cites § 1681b(a) rather than expressly identifying § 1681b(f). That citation should have been to § 1681b(f), which governs a person's use or obtaining of a consumer report. See Pinson v. JPMorgan Chase Bank, N.A., 942 F.3d 1200, 1213–14 (11th Cir. 2019). Section 1681b(f) makes it unlawful for any person to use or obtain a consumer report unless the report is obtained for a permissible purpose and that purpose is certified to the consumer reporting agency. The allegations that Defendant obtained or procured Plaintiff's consumer reports concern conduct governed by § 1681b(f), rather than the furnishing obligations imposed on consumer reporting agencies by § 1681b(a).

The Amended Complaint alleges that Defendant "obtained, procured, and caused access to Plaintiff's consumer reports without a permissible purpose," that Defendant submitted Plaintiff's personal information to "numerous third-party lenders through electronic lender submission systems," and that those submissions occurred after Plaintiff revoked authorization, terminated the transaction, and purchased another vehicle elsewhere. (Am. Compl. ¶¶ 11–13, 26–27.) The Federal

Rules do not require dismissal solely because a plaintiff imperfectly states the legal theory supporting otherwise pleaded facts. See McCreight, 117 F.4th at 1331–32; Johnson, 574 U.S. at 11–12.

Defendant's own Motion confirms notice of that theory: it identifies § 1681b(f) as the provision governing users and devotes its merits arguments to why Plaintiff allegedly cannot state a claim under that subsection. (D.E. 33 at 6–11.)

Accordingly, the Court should construe the claim as arising under §1681b(f). Alternatively, if the Court determines that the operative subsection must be expressly identified, Plaintiff respectfully requests leave to amend ¶¶11 and 26 to identify §1681b(f) expressly.

**B. The Claim Does Not Depend Solely on Whether the August 6 Email Used the Words "Revoke Credit Authorization"**

Defendant places substantial weight on the fact that Plaintiff's August 6 email did not expressly refer to "credit," "consumer reports," or "authorization." Plaintiff does not contend that those words appear in the email. The email states that Plaintiff was "backing out" of the contemplated Cadillac transaction. Five days later, Plaintiff informed Defendant that she had purchased a vehicle elsewhere. The Amended Complaint further alleges that "[a]fter August 11, 2025, no vehicle purchase, financing transaction, or other business relationship remained pending between Plaintiff and Defendants." (Am. Compl. ¶ 10.)

More importantly, the FCRA inquiry is whether a consumer report was obtained or used for a permissible statutory purpose at the time of the challenged activity. See 15 U.S.C. §§ 1681b(a)(3), 1681b(f); Pinson, 942 F.3d at 1213–14. Thus, even if the Court were to construe the August 6 email narrowly, that does not resolve whether Defendant had a permissible purpose authorized by § 1681b(a)(3), as required by § 1681b(f), for lender submissions allegedly occurring weeks or

months after Plaintiff expressly advised that she had purchased a vehicle elsewhere and that no transaction remained pending.

The Amended Complaint alleges that no vehicle purchase, financing transaction, or other business relationship remained pending after August 11, 2025, yet lender submissions continued thereafter. At the pleading stage, whether a particular later submission was actually connected to a continuing consumer-initiated credit transaction, or instead occurred after that transaction had ended, is not resolved merely by characterizing the August 6 email differently.

Defendant's contrary position asks the Court to infer that the original financing inquiry supplied an indefinitely continuing permissible purpose for later submissions. The attached correspondence does not itself establish that proposition.

Defendant's cited authorities do not establish that an initial consumer-initiated financing inquiry creates an indefinitely continuing permissible purpose. Domante involved a report obtained in connection with the consumer-initiated transaction then being evaluated, and Long involved a consumer who remained actively engaged in obtaining financing for the vehicle but attempted to restrict the dealership to a particular lender. Here, the Amended Complaint alleges that Plaintiff informed the dealership that she had purchased a vehicle elsewhere and that no financing transaction thereafter remained pending. Nor does Alexander resolve the separate question presented here: whether later report activity was actually undertaken for a statutorily permissible purpose after the transaction allegedly ended. Pinson is instructive because the Eleventh Circuit treated the timing and alleged purpose of later report requests as relevant to the plausibility analysis at the pleading stage and left the defendant's competing permissible-purpose explanation for later proof. See Pinson, 942 F.3d at 1213–14.

At the Rule 12(b)(6) stage, the Court must accept Plaintiff's allegation that no financing transaction remained pending after August 11, 2025, and Defendant's contrary permissible-purpose theory cannot be resolved without a factual record.

**C. Exhibit B Does Not Contradict Plaintiff's Allegation That Defendant's Lender Submissions Generated Inquiries**

Defendant correctly notes that "The Taverna Collection, Inc." does not appear by name in the inquiry table excerpted in Exhibit B. That fact, however, does not contradict Plaintiff's allegation that Defendant's lender-portal submissions caused inquiries to appear. Exhibit B identifies the names associated with the inquiry entries; it does not identify which dealership or originator transmitted the underlying credit applications to those entities.

As to the moving Defendant specifically, the Amended Complaint alleges that The Taverna Collection, Inc. operates Taverna Infiniti North Miami; that Defendants acted through their employees and agents; that dealership personnel continued submitting Plaintiff's information to lenders; and that Defendants obtained, procured, and caused access to Plaintiff's consumer reports. (Am. Compl. ¶¶ 2, 4, 12, 15–17, 26.) Those allegations must be accepted as true unless an incorporated document actually contradicts them.

The Amended Complaint alleges a specific mechanism: Defendant submitted Plaintiff's personal information to third-party lenders; those lender submissions caused hard inquiries; and the activity occurred through dealership and lender-submission systems. Whether those allegations ultimately can be proven is a matter separate from whether Exhibit B affirmatively contradicts them.

Plaintiff also does not contend that every inquiry shown in Exhibit B was caused by Defendant. The report includes inquiries that predate the alleged termination of the transaction and inquiries from entities unrelated to the conduct alleged here. Plaintiff's claim concerns the post-transaction

inquiries allegedly generated by Defendant's subsequent lender submissions. The Amended Complaint expressly alleges, upon information and belief, that "post-revocation lender submissions caused hard inquiries to appear on Plaintiff's consumer reports" and that those submissions were made through Florida-based dealer and lender-submission systems. (Am. Compl. ¶¶ 15–17.)

Defendant's assertion that an inquiry bearing a lender's name necessarily establishes that Defendant played no role in initiating or procuring the underlying request is a competing factual inference, not a fact stated by Exhibit B itself.

Pinson is instructive. There, the Eleventh Circuit held that the alleged timing and purpose of repeated consumer-report requests stated a plausible § 1681b(f) claim even though the defendant asserted an alternative permissible explanation. 942 F.3d at 1213–14. The court explained that the defendant could later offer evidence establishing its permissible purpose, but that competing explanation was not resolved on a motion to dismiss.

Exhibit B does not state who transmitted the underlying credit applications to the lenders identified, and nothing in the exhibit forecloses Plaintiff's allegation that Defendant's lender-portal submissions caused the post-transaction inquiries. At this stage, Plaintiff need only plausibly allege that inquiry activity contributed to her adverse outcomes, not prove the precise degree of impact, and the adverse-action notices expressly identifying inquiry activity satisfy that burden.

**D. The Amended Complaint Plausibly Alleges Willfulness**

Plaintiff alleges repeated lender submissions after the underlying transaction had ended, extending over a period of weeks and months. (Am. Compl. ¶¶ 12–13, 26–27.) If Defendant knowingly continued obtaining or procuring consumer reports after no financing transaction remained pending, those facts could support a finding of reckless disregard under Safeco. Under Safeco,

recklessness includes conduct that entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 68–70 (2007). In Pinson, the Eleventh Circuit held that allegations of repeated report procurement for an allegedly impermissible purpose could plausibly support reckless disregard under Safeco. 942 F.3d at 1214.

Defendant disputes both the existence of the alleged post-transaction activity and the purpose for which any later report was obtained. Those disputes bear directly on whether Defendant's conduct was objectively reasonable. At this stage, Plaintiff need not prove willfulness; she must allege facts from which willfulness is plausible.

Plaintiff does not rely on her December notices as proof that inquiries necessarily occurred after those notices. Rather, the alleged duration and repetition of the post-transaction activity, if proven, form the principal basis for the willfulness allegation.

**E. The Complaint Plausibly Alleges Actual Damages and Causation**

Section 1681o requires actual damages sustained as a result of the alleged violation, but Rule 8 does not require Plaintiff to prove or fully quantify those damages in the complaint.

Plaintiff alleges a decline in her credit and insurance scores, increased insurance costs, emotional distress, and time and expenses incurred investigating and disputing the challenged inquiries. The attached GEICO notice expressly identifies "too many non-credit card inquiries" among the credit factors that had the most influence on the price quoted to Plaintiff. The Apple Card notice is even more direct: it states that the application "was not approved at this time because" Plaintiff had made too many recent applications for credit resulting in hard inquiries. The document separately identifies several factors that adversely affected Plaintiff's credit score. Defendant's Motion conflates those separate portions of the notice. At the pleading stage, the express denial reason supports a plausible causal connection between inquiry activity and the lost credit opportunity.

Defendant emphasizes that the notices identify other credit-related considerations, but those additional considerations do not make the documents inconsistent with Plaintiff's allegation that inquiry activity contributed to the adverse outcomes. Plaintiff need not prove at the pleading stage that inquiry activity was the sole cause of every claimed loss. Pinson likewise treated allegations of lost credit opportunities, higher auto-insurance premiums, and time and money spent addressing credit-report problems as sufficiently specific alleged injuries at the pleading stage. See Pinson, 942 F.3d at 1206–08.

Likewise, Defendant's reliance on GEICO's statement concerning aggregation of certain motor-vehicle inquiries does not establish from the face of the pleading that every challenged inquiry was coded as a qualifying motor-vehicle inquiry or that every challenged inquiry fell within the same applicable aggregation period.

Defendant's reliance on subsequent fluctuations in Plaintiff's scores likewise does not establish lack of causation as a matter of law. A fluctuating score may reflect multiple inputs and does not negate the allegations of score decline or the adverse-action documents expressly identifying inquiry activity as relevant to the insurance price and credit denial.

Plaintiff will ultimately bear the burden of proving actual damages and causation under §1681o. At the pleading stage, however, the allegations and attached adverse-action materials plausibly allege both.

**F. Plaintiff Does Not Oppose Dismissal of Any Unavailable Prospective Equitable Relief**

Plaintiff does not oppose dismissal of the requests for declaratory and prospective equitable relief contained in ¶¶ 33–34 and Prayer ¶ D. That concession does not affect Counts I and II or Plaintiff's claims for damages under §§ 1681n and 1681o.

**G. Any Rule 10(b) or Rule 12(e) Defect Is Readily Curable and Does Not Warrant Dismissal**

Defendant alternatively requests a more definite statement because several substantive allegations in the Amended Complaint appear in unnumbered paragraphs and because certain allegations refer collectively to "Defendants." Plaintiff acknowledges that several substantive paragraphs should have been separately numbered.

Those formatting issues do not render the pleading so vague or ambiguous that Defendant cannot reasonably prepare a response, as demonstrated by Defendant's detailed response to the allegations. Defendant's ability to parse the Amended Complaint and present a 17-page Rule 12(b)(6) analysis confirms that the pleading provides fair notice of the claims. See Pinson, 942 F.3d at 1208 (declining to dismiss a pro se complaint as a shotgun pleading where the defendant understood the claims well enough to address their merits). Nevertheless, if the Court determines that Rule 10(b) requires repleading or that allegations should be separated further by Defendant, Plaintiff has no objection to filing a more definite statement or amended pleading curing those matters.

Such curable pleading issues do not support dismissal with prejudice.

**H. Alternatively, Plaintiff Requests Leave to Cure Any Pleading Deficiency**

If the Court concludes that the Amended Complaint does not adequately identify §1681b(f), does not sufficiently distinguish the conduct attributed to each Defendant, or otherwise requires additional factual specificity, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

The deficiencies identified by Defendant—including the statutory subsection citation, numbering of allegations, and defendant-specific clarification—are matters capable of correction by a more carefully drafted pleading. Plaintiff is prepared, if directed, to amend ¶¶ 11 and 26 to cite §

1681b(f), to renumber unnumbered factual allegations, and to further distinguish the conduct alleged as to each Defendant. Plaintiff proceeds pro se, and there is no showing that a further amendment addressing those specific issues would cause undue prejudice, result from bad faith, or necessarily be futile. See Fed. R. Civ. P. 15(a)(2); Woldeab v. DeKalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291–92 (11th Cir. 2018).

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant The Taverna Collection, Inc.'s Motion to Dismiss Counts I and II. Plaintiff does not oppose dismissal of the requests for declaratory and prospective equitable relief contained in ¶¶ 33–34 and Prayer ¶ D, but expressly opposes dismissal of Counts I and II seeking damages under §§ 1681n and 1681o. Alternatively, if the Court determines that the Amended Complaint requires identification of §1681b(f), additional defendant-specific allegations, numbered allegations, or other clarification, Plaintiff respectfully requests leave to amend or to provide a more definite statement rather than dismissal with prejudice.

Respectfully submitted,

Paige Smith
Plaintiff, Pro Se
5103 Wildwood Drive
Manvel, Texas 77578
Telephone: 713-261-0300
Email: paigeamj@yahoo.com
Dated: August 11, 2026

Paige Smith
5103 WILDWOOD DR
MANVEL, TX 77578

HOUSTON TX RPDC
15 AUG 2026 PM

REC'D BY ____
AUG 19 202[illegible]
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

CLERK OF COURT - 8TH FLOOR
SOUTHERN DISTRICT OF FL
400 N MIAMI AVE
MIAMI, FL 33128

33128-180199